UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ERIC L. DALE,

                     Petitioner,

    v.

BRIAN E. WILLIAMS, [1] *et al.*,

                     Respondents.

Case No. 3:20-cv-00031-MMD-CLB

ORDER

## I.    SUMMARY

This is a 28 U.S.C. § 2254 habeas corpus action brought by Petitioner Eric L. Dale, a Nevada prisoner who is represented by the Federal Public Defender. The matter is before the Court for adjudication on the merits of the remaining claims. Because the Court concludes that two grounds are procedurally barred from federal review and that the other remaining claims lack merit, the Petition is denied. The Court also denies a Certificate of Appealability.

## II.    BACKGROUND

### a.  State Court Proceedings

A jury in Washoe County, Nevada convicted Dale of attempted murder with use of a deadly weapon, battery with a deadly weapon, and discharging a firearm at or into an occupied vehicle. (ECF No. 54-3.) The charges stemmed from a 2013 incident when Dale got into a single-car accident in Reno, abandoned his car, and began walking down the middle of a busy street. (*See* ECF No. 44 at 2.) He called 911 and told the operator that 15-20 people were chasing him. When a police car drove by, Dale tried to flag the officer

---

[1]According to the Nevada Department of Corrections inmate locator page, Dale is incarcerated at Southern Desert Correctional Center. The department's website reflects Manuel Portillo is the warden for that facility. At the end of this order, the Court directs the Clerk to substitute Manuel Portillo for prior respondent Brian Williams, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

1   down. Then Dale walked up to a car stopped at a red light, raised his gun to the window,

2   and fired into the car. The driver survived. In September 2014, the state district court

3   declared Dale a habitual criminal and sentenced him to life in prison with the possibility

4   of parole after ten years. (ECF Nos. 54-6, 54-7.)

5       Dale appealed, and the Nevada Court of Appeals affirmed his convictions. (ECF

6   No. 55-18.) The Nevada Court of Appeals affirmed the denial of his state postconviction

7   habeas corpus petition in December 2019. (ECF No. 57-17.)

8       **b. Federal Habeas Proceedings**

9       In January 2020, Dale dispatched his *pro se* federal habeas petition for mailing.

10  (ECF No. 1-1.) Counsel was appointed, and the Court granted equitable tolling for the

11  period when COVID-19 protocols prevented Dale's counsel from having a

12  neuropsychologist examine Dale and prepare a report. (ECF No. 15.) Dale ultimately filed

13  his Second Amended Petition ("Petition") in July 2022. (ECF No. 44.) The Court granted

14  Respondents' motion to dismiss in part and dismissed ground 2 as procedurally barred.

15  (ECF No. 73.) The following grounds for relief remain for the Court's consideration:

16
17      Ground 1: Trial counsel ineffectively failed to investigate (A) a Not Guilty by Reason of Insanity defense and (B) a voluntary intoxication defense in violation of the Sixth and Fourteenth Amendments.

18
19      Ground 3: Trial counsel failed to seek a psychiatric evaluation of Dale concerning his competency during his trial.

20
21      Ground 4: Trial and appellate counsel were ineffective for failing to object to the sentencing enhancement based upon the State's presentation of incomplete court records.

22
23      Ground 5: Trial and appellate counsel failed to object to the amendment to the indictment on count III after presentation of evidence and the conclusion of the State's case.

24
25      Ground 6: Dale was convicted of all counts on insufficient evidence in violation of the Fifth, Sixth, and Fourteenth Amendments.

26
27      Ground 7: Dale was denied his constitutional right to present a complete defense in violation of his due process rights under the Fifth, Sixth, and Fourteenth Amendments.

28

> Ground 8: Dale's counsel failed to investigate or present important mitigating evidence at Dale's sentencing.

(ECF No. 44 at 8-29.)

Respondents have answered the remaining claims, and Dale replied. (ECF Nos. 84, 95.)

## III.    TRIAL TESTIMONY[2]

The victim, Robert Shontz, testified that, on May 7, 2013, at about 10:45 p.m., he was leaving The Atlantis Casino parking lot in Reno and was stopped in his truck at a red light. (ECF No. 52-11 at 27-70.) He saw a man wearing a hoodie walking towards the intersection. Shontz reached down to turn on the radio and suddenly felt as if he'd been hit in the head with a sledgehammer. He also felt pain in his arm. He pulled into the valet area; his head was bleeding heavily. He had been shot in the head and in the arm. Shontz told police he last saw the man when he was about 10 to 15 feet from the passenger side of his truck, and he wasn't certain if it was that person who shot him.

Maria Limon testified that she was working at The Atlantis that night. (*Id.* at 70-86.) Her boyfriend Erick Reyes met her after her shift to walk her home. She saw Shontz's truck pull up to the stoplight. She saw a person in a hoodie walk up and try to open the passenger door. The person then fired two shots into the truck; Limon thought it sounded like a handgun, but she couldn't see the weapon. She ran toward the casino; the victim had driven over there and was bleeding from his head.

Reyes testified that he walked to the casino to pick up Limon after work. (*Id.* at 86-97.) He saw a man approach the truck and try to open the passenger door. Reyes then heard two gunshots and saw the truck jerk forward. He heard two more gunshots, and the truck then pulled into the valet area. The shooter ran in the opposite direction. He never saw the man's face.

///

---

[2]The Court makes no credibility or other factual findings regarding the truth or falsity of this evidence from the state court. The Court's summary is merely a backdrop to its consideration of the issues presented in the Petition.

Reno Police Department Officer Eric Friberg testified that casino surveillance video footage showed a person walking down the middle of a busy main street. (ECF No. 53-2 at 39-101.) Before the shooting, the perpetrator had called 911 and reported that people were chasing him; dispatch told officers it was a possible "1096," the code for a mentally unstable individual.[3] The video showed that an officer drove by the casino but didn't see the caller, so the perpetrator called 911 again. The video then showed Shontz's truck stopped at the light and a person walking up to the passenger side and firing into the truck. The shooter held onto the passenger door handle as the truck began to drive away. The shooter ran across the street and another officer in a patrol car saw him. The shooter ran behind a couple of trees then re-emerged and flagged down the second officer, who made contact. A revolver and a bag of ammunition was found behind one of the trees. Friberg identified Dale as the person with whom police made contact that night. Friberg asked Dale at the scene if he was the shooter, which Dale denied. Dale told multiple responding officers that people were chasing him. He acknowledged that he had been in the middle of the street and then was in the intersection in question; he said he didn't see or hear any shooting. Dale was coherent and answered questions appropriately.

Washoe County Sheriff's Deputy Victor Ruvalcaba investigated the scene and testified that the passenger window of the truck had four bullet holes. (ECF No. 52-11 at 131-164; ECF No. 53-2 at 4-22.) Two bullets were recovered from the truck; doctors removed the bullet from Shontz's head but were unable to remove the bullet in his arm. A gun and bag of ammunition were found underneath a pine tree near where Dale made contact with police. Police had earlier arranged for the towing of a vehicle that had been abandoned in the middle of an intersection that was registered to Eric Dale. (ECF No. 53-2 at 131-152.)

///

---

[3]As will be discussed with respect to ground 7, three defense witnesses testified that, in the couple of days leading up to and on the day of the shooting, Dale acted paranoid and erratic and said that people were coming to get him.

## IV.    STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for

1  relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102

2  (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

3  (describing the standard as a "difficult to meet" and "highly deferential standard for

4  evaluating state-court rulings, which demands that state-court decisions be given the

5  benefit of the doubt") (internal quotation marks and citations omitted).

6  **V.    DISCUSSION**

7      **a.    Trial Court Error Claims**

8          **i.  Ground 6: Insufficient Evidence**

9      Dale asserts that insufficient evidence supported his convictions in violation of

10 his Fifth, Sixth, and Fourteenth Amendment due process rights. (ECF No. 44 at 22-24.)

11 He argues that the State failed to prove beyond a reasonable doubt that he had an intent

12 to kill.

13     "The Constitution prohibits the criminal conviction of any person except upon proof

14 of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing

15 *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of

16 conviction under § 2254, the petitioner is entitled to relief if based on the evidence

17 presented no rational trier of fact could have found proof of guilt beyond a reasonable

18 doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the

19 substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On

20 habeas review, the Court must assume that the trier of fact resolved any evidentiary

21 conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. When

22 federal courts "assess a sufficiency of evidence challenge in the case of a state prisoner

23 seeking federal habeas corpus relief subject to the strictures of AEDPA, there is a double

24 dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964

25 (9th Cir. 2011). First, the *Jackson* standard is itself deferential. *See id.* Second, the state

26 court's determination of sufficiency of evidence claims is entitled to deference. *See id.* at

27 964-965. Generally, the credibility of witnesses is beyond the scope of a review of the

28 sufficiency of the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

In Nevada, specific criminal intent to kill is required to establish the crime of attempted murder. *See Keys v. State*, 766 P.2d 270, 273-74 (Nev. 1988). The Nevada Supreme Court has held that a person's "intent to kill" may be deduced from the facts and circumstances surrounding the alleged killing. *See Dearman v. State*, 566 P.2d 407, 409 (Nev. 1977). Intent is usually "inferred by the jury from the individualized, external circumstances of the crime," such as "the intentional use of a deadly weapon upon the person of another at a vital part." *Sharma v. State*, 56 P.3d 868, 874-75 (Nev. 2002). Battery is a general intent crime, where "the prosecutor need only prove that 'the defendant actually intend[ed] to commit a willful and unlawful use of force or violence upon the person of another." *Byars v. State*, 336 P.3d 939, 949 (Nev. 2014). A conviction for discharging a firearm into a vehicle requires that the defendant "willfully and maliciously discharge[d] a firearm." NRS § 202.285(1).

The Nevada Court of Appeals concluded that the State presented sufficient evidence to prove the requisite intent:

> Appellant Eric Dale contends the evidence presented at trial was insufficient to support the jury's finding of guilt. Specifically, he asserts the State failed to prove that he possessed the requisite intent to commit the crimes.[FN1] We disagree.

> When reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). "[I]t is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975). And circumstantial evidence is enough to support a conviction. *Lisle v. State*, 113 Nev. 679, 691-92, 941 P.2d 459, 467-68 (1997), holding limited on other grounds by *Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).

> The jury heard testimony that an individual walked up to a truck while it was stopped at a red light and tried to open the passenger door. When unsuccessful in opening the door, the individual fired two shots into the truck, both of which struck the driver—one in the head and one in the arm. As the driver drove the truck across the intersection, the individual continued to hold onto the truck and fired two additional shots into the

truck, neither of which struck the driver. The individual then ran to a grassy area, where he stayed for a short period of time. The individual later ran across the street to an area with a tree. A police officer contacted the individual when he was near the tree and the individual was identified as Dale. During a search of the area near the tree, a police officer found a revolver and a bag of ammunition. The entire event was captured on surveillance video and the video was shown to the jury.

The jury could reasonably infer from the evidence presented that Dale willfully and maliciously discharged a firearm into the truck, *see* NRS 202.285, he willfully and unlawfully used force against the driver that caused substantial bodily harm by shooting him in the arm, *see* NRS 200.481(1)(a), (2)(e)(2), and he intended to kill the driver when he shot him in the head with a gun, *see* NRS 193.330, NRS 200.010(1); NRS 200.020. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State,* 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

[FN1: Dale does not challenge the conviction for felon in possession of a firearm.]

(ECF No 55-18 at 2-4.)

The jury heard eyewitness testimony that Dale walked up to the truck, tried to open the passenger door and then shot into the truck, striking Shontz in the arm and the head. Dale also tried to hold onto the truck and continued shooting as the truck drove away. Surveillance video footage captured the incident and showed Dale cross the street afterwards, where police arrested him and found the gun and ammunition close by. The jury also heard testimony that Dale had called 911 to report that people were chasing him, he had abandoned his own vehicle in the middle of an intersection, and, at one point, he was inexplicably standing in the middle of a very busy street. He had expressed to others in the days prior to the shooting that people were out to get him, and his behavior was erratic and paranoid. But he also discarded the gun and ammunition and denied shooting anyone to police, suggesting he understood that his actions were wrong. The jury was not unreasonable in finding that Dale intended to kill the victim when he shot him in the head and continued firing on him.

///

1    The Nevada Court of Appeals did not unreasonably conclude that the evidence

2    presented sufficiently supported the jury's finding. So, Dale has not demonstrated that the

3    Nevada Court of Appeal's decision on federal ground 6 was contrary to, or involved an

4    unreasonable application of, clearly established U.S. Supreme Court law, or was based

5    on an unreasonable determination of the facts in light of the evidence presented. *See* 28

6    U.S.C. § 2254(d). The Court accordingly will deny federal habeas relief on ground 6.

### ii. Ground 7: Right to Present a Complete Defense

8    Dale argues that the trial court did not allow him to present a complete defense

9    in violation of his Fifth, Sixth, and Fourteenth Amendment due process rights. (ECF No.

10    44 at 24-27.) He argues that the Court improperly limited defense testimony.

11    Criminal defendants have a constitutional right to "a meaningful opportunity to

12    present a complete defense." *Crane v. Ky.*, 476 U.S. 683, 690 (1986) (citing *Chambers*

13    *v. Mississippi*, 410 U.S. 284, 302-303 (1973); and *Wash. v. Tex.*, 388 U.S. 14, 22

14    (1967)). States have "broad latitude under the Constitution to establish rules excluding

15    evidence from criminal trials." *Nev. v. Jackson*, 569 U.S. 505, 509 (2013) ("Only rarely

16    have we held that the right to present a complete defense was violated by the exclusion

17    of defense evidence under a state rule of evidence.") (citing *Holmes v. S.C.*, 547 U.S.

18    319, 324 (2006)). "The right to offer the testimony of witnesses, and to compel their

19    attendance, if necessary, is in plain terms the right to present a defense, the right to

20    present the defendant's version of the facts as well as the prosecution's to the jury so it

21    may decide where the truth lies." *Washington*, 388 U.S. at 19.

22    Here, three defense witnesses testified that Dale's mental state appeared to

23    deteriorate right before the shooting. The Court determined that testimony about Dale's

24    behavior immediately before his arrest was relevant and not outweighed by unfair

25    prejudice. The Court limited the witnesses to testifying about how Dale seemed in the few

26    days before the incident. (ECF No. 53-2 at 158-179.)

27    Linda Bracken testified at trial that she was a manager at the apartments where

28    Dale lived. (ECF No. 53-2 at 154-158, 180-185.) She testified that a couple of days before

9

the shooting, she met with Dale for about an hour to complete some paperwork. He appeared fearful, paranoid, jumpy, and not his usual self. Bracken said that when the mailman made a loud sound opening the mail bin in the next room: "…Mr. Dale actually jumped out of his chair, turned around in a fighting stance, to defend himself. And I thought that was very odd. And I was telling him, you know, calm down. It's just the mail person." She said Dale responded: "Nobody – he said they're coming to get me." (ECF No. 53-2 at 182.) Dale continued to look around as if someone was coming to get him. He seemed confused when filling out the paperwork; Bracken had to continually explain the forms and where he needed to sign.

Another witness testified that she knew Dale. (ECF No. 53-2 at 185-190.) Earlier on the day of the shooting when she encountered him, he kept looking behind him and seemed paranoid, frightened, or worried. Dale's girlfriend testified that, the day before the shooting, he called her. (ECF No. 53-2 at 191-195.) He seemed paranoid and was rambling; he wasn't himself.

The Nevada Court of Appeals held that Dale was able to introduce evidence that he was acting strangely and was extremely paranoid in the days before the shooting:

> Dale also contends the district court abused its discretion by limiting the testimony of his defense witnesses. Dale claims he should have been allowed to elicit testimony from his witnesses that, within a month of the event, he had told the witnesses he believed he was being followed and he believed someone had broken into his home. Dale asserts that this testimony would have highlighted his paranoia leading up to the shooting and supported his defense that he did not have the requisite intent to commit the crimes.
>
> We review a district court's decision to admit or exclude evidence for an abuse of discretion. *Thomas v. State*, 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006).
>
> The district court found testimony regarding Dale's behavior prior to the event was relevant and admissible. However, the district court generally limited Dale's witnesses' testimony to their observations of his behavior in the few days immediately preceding the event. Although the district court also ruled that Dale's statement to one witness that he thought he was being followed was admissible under NRS 51.105(1), Dale did not elicit this testimony from the witness. Even with the limitations imposed by the court, Dale was able to present evidence that he was

10

1
2
3

       acting unusual and appeared to be extremely paranoid in the days leading to the event. Having reviewed the record, we conclude the district court did not abuse its discretion by limiting the testimony of the defense witnesses. NRS 50.115(1).

4

(ECF No. 55-18 at 4-5.)

5
6
7
8
9
10
11
12
13
14
15
16
17
18

       Dale now argues that the trial court did not allow defense witnesses to testify about anything Dale said in the days leading up to the shooting. (ECF No. 44 at 25.) But that is belied by the testimony recounted above. Defense witnesses testified that Dale was acting very strangely—seemed extremely paranoid—shortly before the shooting. One witness testified that, a day or two prior, Dale appeared fearful and had told her that people were coming to get him. He was jumpy and constantly looking around. The court did limit the testimony to the witnesses' interactions with Dale within a couple of days before the shooting. The court reasonably limited the testimony to the most relevant timeframe. Dale has not demonstrated that the Nevada Court of Appeals' conclusion that the district court did not abuse its discretion in limiting the testimony was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Thus, the Court denies federal habeas relief on ground 7.

19

     **b.**    **Ineffective Assistance of Counsel Claims**

20

         **i.**    **Standard for Ineffective Assistance of Counsel Claims**

21
22
23
24
25
26
27
28

       In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that counsel's "representation fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

In reviewing a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply, so review is doubly deferential. *See Richter*, 562 U.S. at 104-05. Therefore, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

### ii. Ground 1(A): An Insanity Defense

Dale alleges that his trial counsel ineffectively failed to investigate a defense of Not Guilty by Reason of Insanity ("NGRI"). (ECF No. 44 at 9-10.) Dale argues that counsel had information from several witnesses who had observed drastic changes in Dale's mental health just before the incident. He had a prior diagnosis of PTSD, paranoid schizophrenia, anxiety and bipolar disease, and the random shooting was bizarre and appeared senseless. He contends that he wanted to enter a NGRI plea and lacked understanding of what he did at the time of the actual shooting.

Nevada Courts have applied the *M'Naghten*[4] test for insanity for more than a century. *See Miller v. State*, 911 P.2d 1183, 1185-1186 (Nev. 1996); *State v. Lewis*, 22 P. 241 (Nev. 1889). Under the *M'Naghten* test, "the defense must show that the defendant labors under such a mental defect that the defendant cannot understand the nature of his actions or cannot tell the difference between right and wrong." *Miller*, 911 P.2d at 1185. Inability to tell the difference between right and wrong is not satisfied by mere diminished capacity. *See Crawford v. State*, 121 P.3d 582, 591 (Nev. 2005). The "fact that a person had mental health problems did not necessarily mean that he or she could meet the

---

[4] *M'Naghten's Case*, 10 Cl. & Fin. 200, 8 Eng. Rep. 718 (1843).

1    *M'Naghten* test for insanity." *Finger v. State*, 27 P.3d 66, 72 (Nev. 2001); *see also Kassa*

2    *v. State*, 485 P.3d 750, 754 (Nev. 2021) (For alleged insanity to be a complete defense

3    to the charged crimes, a defendant's condition must satisfy the "specific and demanding

4    *M'Naghten* test. . . .").

5          Dale was evaluated three separate times for competency to participate in and

6    assist with his defense. (*See* ECF Nos. 29-2, 29-3, 29-4.) All three concluded that Dale

7    understood the charges and was capable of aiding in his own defense, and that his

8    reported symptoms were generally inconsistent with usual signs of mental illness.

9          Dale's trial counsel, Marc Picker, testified at the evidentiary hearing on Dale's state

10   postconviction petition that, at his request, Dale's competency was evaluated multiple

11   times before trial. (ECF No. 56-6 at 17-23.) Picker "absolutely" considered a NGRI plea.

12   (*Id.* at 19.) He recalled that the defense had talked to a psychiatrist or psychologist; he

13   knew he discussed this issue with several other defense attorneys. The defense

14   investigated Dale's version of events and tried to obtain evidence to corroborate it. They

15   got the police report from Dale's auto accident shortly before the shooting, where he

16   believed he had been forced off the road by people who were trying to get him. They

17   reviewed video from the area. While Dale's story remained consistent, counsel concluded

18   that Dale could not meet the strict legal standard for a NGRI plea in Nevada. Dale agreed

19   not to pursue that defense. Picker thought that the theory that Dale did not intend to harm

20   the victim was more likely to be successful. The defense tried to present evidence on

21   cross-examination and through defense witnesses that spoke of Dale's delusional

22   behavior to demonstrate lack of intent. During trial, Dale appeared to understand the

23   proceedings, he behaved appropriately, took notes, and asked questions of his attorneys.

24   Dale understood that shooting into an occupied vehicle was wrong, and he expressed

25   great remorse that Shontz was injured.

26         Dale testified at the evidentiary hearing that he had been diagnosed with PTSD.

27   (ECF No. 56-6 at 57-63.) He said he had been off his prescribed mental health drugs for

28

1    about a month leading up to the shooting. He said he had moved to Nevada from

2    California and hadn't found a medical facility yet to prescribe the medications.

3          The Nevada Supreme Court denied this claim as follows:

4               Second, Dale argues trial counsel should have pursued a plea of not
          guilty by reason of insanity. Dale does not demonstrate deficient
5         performance or prejudice. Trial counsel testified that he considered an
          insanity defense, consulted with a mental health professional and other
6         defense attorneys, and discussed with Dale his view that there was
          insufficient support for the defense. Counsel further testified that Dale
7         agreed not to enter a plea of not guilty by reason of insanity, and Dale did
          not testify that he told counsel or the district court that he wanted to enter
8         such a plea. Substantial evidence supports the district court's findings that
          counsel's decision as to what defense would be the most successful was
9         strategic and sufficiently investigated. Accordingly, Dale does not
          demonstrate trial counsel was ineffective in this regard. . . . .
10

11   (ECF No. 57-17 at 4.)

12         Defense counsel had three competency evaluations completed before Dale's trial

13   that all concluded that he understood the proceedings and was able to assist in his own

14   defense. Notably, one evaluator concluded that it was likely that Dale was feigning some

15   symptoms. (ECF No. 29-2.) Counsel testified credibly that he thoroughly investigated a

16   NGRI plea and concluded that it would be futile because Dale did not meet the legal

17   standard for the plea. The defense did present evidence that Dale was delusional to try

18   to show that Dale lacked any intent to kill. Defense witnesses testified that Dale was

19   paranoid and believed he was being followed, and police officers testified that Dale told

20   them he was being followed. Dale also attempted to hide the gun and ammunition and

21   denied shooting anyone. Dale has not shown that counsel failed to sufficiently investigate

22   and consider a NGRI plea. He has not demonstrated that the Nevada Supreme Court's

23   decision on federal ground 1(A) was contrary to, or involved an unreasonable application

24   of, *Strickland*, or was based on an unreasonable determination of the facts in light of the

25   evidence presented. *See* 28 U.S.C. § 2254(d). Habeas relief is therefore denied on

26   ground 1(A).

27   ///

28   ///

### iii.  Ground 3: Psychiatric Evaluation

Dale contends that trial counsel was ineffective for failing to seek a psychiatric evaluation of him. (ECF No. 44 at 15-17.) He argues that counsel should have doubted Dale's competency during trial because the jail was not giving Dale medications he had taken in the past, and Dale stopped taking the Risperdal that the jail prescribed a couple of weeks before trial.

The criminal prosecution of a defendant who is not competent to stand trial violates due process. *See Medina v. Cal.*, 505 U.S. 437, 439 (1992). In Nevada, an incompetent defendant is defined as one who does not have the present ability to understand either the nature of the criminal charges against him or the nature and purpose of the court proceedings or is not able to aid and assist his counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding. *See* NRS § 178.400(2)(a).

Under Nevada's competency procedure, if any "doubt arises as to the competence of the defendant, the court shall suspend the proceedings, the trial or the pronouncing of the judgment, as the case may be, until the question of competence is determined." NRS § 178.405(1). The trial court then holds a hearing to fully consider whether there is reasonable doubt as to competency that warrant further competency proceedings under *See* NRS 178.415; *see also Olivares v. State*, 195 P.3d 864 at 869 (Nev. 2008). Competence is measured by the defendant's ability to understand the nature of the criminal charges and the nature and purpose of the court proceedings and by his or her ability to aid and assist his or her counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding. *See Calvin v. State*, 147 P.3d 1097, 1100 (Nev. 2006); *Dusky v. United States*, 362 U.S. 402 (1960); *see also* NRS § 178.400(2)(a)-(c).

As described above, Dale was evaluated and found competent in pre-trial evaluations. Picker testified at the state postconviction hearing that, during trial, Dale appeared to understand the proceedings, he behaved appropriately, and he took notes

1   and asked questions of his attorneys. (ECF No. 56-6 at 17-23.) Dale understood that

2   shooting into an occupied vehicle was wrong, and he expressed great remorse that

3   Shontz was injured.

4       Dale testified at that hearing that he had been taking Seroquel, Paxil, and

5   Depakote but had stopped taking those about a month before the shooting. (*Id.* at 59-62.)

6   He stopped the medications "cold turkey" because he had recently re-located to Nevada

7   and had not found a provider to prescribe them. (*Id.* at 60.) In jail, he was prescribed

8   Risperdal. He asked the jail to change the medication or reduce the dose, but no change

9   was made. He stopped taking Risperdal about two weeks before trial. Dale said he

10  understood "certain things" during trial. (*Id.* at 61.) He maintained that he never intended

11  to the kill the victim. He said that Picker discussed the potential risks of a jury trial. Dale

12  wanted to go to trial because he didn't intend to hurt anyone and only acted because he

13  felt that his life was in danger.

14      The Nevada Supreme Court denied this claim as follows:

15          To the extent Dale claims trial counsel should have known he was
16      not competent to proceed to trial, he has not shown deficient performance
        or prejudice. Dale was evaluated for competency at least three times before
17      trial, with all evaluations concluding Dale was competent to proceed to trial.
        The trial court agreed with the evaluations and made a finding of Dale's
18      competency. Additionally, counsel testified that Dale appeared to
        understand the trial proceedings and that he was able to communicate and
19      assist by writing notes or asking questions. Accordingly, Dale has not shown
        he is entitled to relief on this claim.
20
    (ECF No. 57-17 at 5-6.)

21      Nothing in the record suggests that there was reason to question Dale's

22  competency during trial. Notably, while he testified at the state postconviction

23  proceedings that he stopped taking the Risperdal before the trial, he did not testify with

24  any specificity that he was unable to understand and participate in the trial. His counsel

25  asked him one question on the subject: "[W]hen you were in the actual trial setting could

26  you understand everything going on?" And he answered: "Not everything, but certain

27  things I understood." (ECF No. 56-6 at 61.) Trial counsel reasonably relied on the

28  competency evaluations. Additionally, he testified to his personal observations that Dale

appeared to understand the proceedings and actively participated in his own defense. The Nevada Supreme Court's determination constituted an objectively reasonable application of *Strickland*'s performance prong and was not based on an unreasonable determination of the facts. Accordingly, the Court will deny habeas relief on ground 3.

### iv.  Ground 4: Sentencing Enhancement

Dale alleges that trial and appellate counsel failed to object to the habitual criminal sentencing enhancement. (ECF No. 44 at 17-20.) He argues that the State failed to present certified copies of two of the convictions used to seek habitual criminal treatment. He also asserts that one of the California convictions would not be a felony under Nevada law.

The trial court sentenced Dale as a habitual criminal under NRS § 207.010. (ECF No. 54-7 at 2-3.) At the time of Dale's crimes, NRS § 207.010(b) provided that a defendant convicted of any felony, "who has previously been three times convicted, whether in this State or elsewhere, of any crime which under the laws of the situs of the crime or of this State would amount to a felony is a habitual criminal." NRS § 207.010(b).

In Nevada, when using a prior conviction to seek an enhanced sentence, "the state must prove beyond a reasonable doubt: (1) the identity of the person; and (2) the conviction of prior felonies." *Carr v. State*, 620 P.2d 869, 871 (Nev. 1980); *see also Howard v. State*, 422 P.2d 548, 550 (Nev. 1967). Documentation other than a certified copy of a judgment of conviction can establish the existence of a prior conviction. *See Pettipas v. State*, 794 P.2d 705, 706 (Nev. 1990) (state district court properly relied on "certified copies of docket sheets and other documents from the courts in which the convictions were entered"); *see also English v. State*, 9 P.3d 60, 64 (Nev. 2000) (documents including a "criminal complaint, a signed waiver of rights form, and two pages of handwritten notes" were sufficient evidence of defendant's prior conviction); *Isom v. State*, 776 P.2d 543, 546 (Nev. 1989) (documents including defendant's pleadings of nolo contendere to one offense and guilty to another, along with the complaint, were sufficient to establish prior convictions).

1       Defense counsel Picker testified at the state postconviction hearing that, after the

2  verdict, he met with Dale several times to prepare for the sentencing hearing. (ECF No.

3  56-6 at 25-31.) He told Dale that the court might adjudicate him as a habitual criminal.

4  Picker said that if the court sentenced Dale as a habitual criminal and ran the sentences

5  concurrent, then Dale would likely serve less time than if he were sentenced on the

6  individual offenses. Picker reviewed the documentation of Dale's prior judgments of

7  conviction that the State would present at sentencing. The convictions included three for

8  possession of a firearm and one for assault with a deadly weapon. (*See* ECF No. 54-6 at

9  43-44; *see also* ECF No. 84 at 21-23.) Dale agreed that they were all valid convictions.

10  Picker did not object to any of the documentation of the judgments of conviction because

11  he believed that it was all sufficient for the court to find valid prior felony convictions. (*See*

12  ECF No. 54-6 at 39-40.)

13       Dale testified that Picker never met with him after trial and before sentencing and

14  denied discussing or seeing the prior conviction documents. (ECF No. 56-6 at 62-63.) He

15  thought certain errors in the criminal history made it look worse than it actually was.

16       The Nevada Supreme Court concluded that Dale did not show deficiency by trial

17  or appellate counsel or prejudice:

> First, Dale argues trial counsel should have objected to the State's proof of prior felony convictions for the purposes of adjudicating him a habitual criminal. Dale does not demonstrate deficient performance or prejudice. While a certified copy of a felony conviction is prima facie evidence of a prior felony conviction, there are other means by which the State can prove a prior felony conviction beyond a reasonable doubt. *See* NRS 207.016(5); *Atteberry v. State*, 84 Nev. 213, 217, 438 P.2d 789, 791 (1968). Additionally, Dale does not identify an objection that would have had a reasonable probability of successfully challenging the prior convictions and changing the outcome of the sentencing hearing. He notes that at least one of the prior convictions mentions jail time of less than a year, but he does not demonstrate he was convicted of something less than a felony.[FN1] He also complains that the defense was not provided documentation of the fourth felony conviction presented to the district court until sentencing but does not allege that the documentation was invalid. Substantial evidence supports the district court's finding that Dale conceded the veracity of his prior felony convictions to counsel. Accordingly, Dale does not demonstrate trial counsel was ineffective in this regard.[FN2]

18

[FN1: We disagree with Dale's contention that because a jail sentence of less than a year would not constitute a felony in Nevada, such a sentence demonstrates the crime was not a felony in "the situs of the crime." NRS 207.010(1)(b).]

[FN2: Additionally, Dale does not demonstrate that appellate counsel was ineffective for omitting this argument on appeal. *See Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996) (applying *Strickland* to claims of ineffective assistance of appellate counsel and holding "[a]n attorney's decision not to raise meritless issues on appeal is not ineffective assistance of counsel").]

(ECF No. 57-17 at 3-4.)

When it denied this claim, the state district court had explained:

Counsel for the Petitioner ("Ms. Butko") represented at the hearing there is a case standing for the proposition certified copies of the judgments of conviction are required for habitual criminal enhancement. Ms. Butko could not recall the case name, but was given time following the hearing to submit the case name and citation for the Court's review. Hearing Transcript, 100:20-24. Ms. Butko submitted a list of cases to the Court on June 1, 2018. The Court has reviewed the cases and determined none of them support Ms. Butko's contention. Mr. Picker testified he reviewed the evidence of the Petitioner's prior convictions and found nothing to indicate the certified documents evincing prior convictions were insufficient. Hearing Transcript, 29:10-15. Mr. Picker further testified the Petitioner conceded the veracity of the prior felony convictions. Hearing Transcript, 27:18-20. A defendant may stipulate to specific prior felony convictions. *Hodges v. State*, 119 Nev. 479, 78 P.3d 67 (2003). Mr. Picker's failure to object to the use of Exhibit 37 and 38 on the basis they do not contain certified judgments of conviction does not constitute deficient performance.

(ECF No. 56-8 at 8-9.)

The State had to prove beyond a reasonable doubt that Dale committed the prior felonies. But there is no requirement that the State provide certified copies of the judgments of conviction. And the Nevada habitual criminal statute provided that any previous conviction of a crime that would amount to a felony where it was committed is a prior felony conviction for the purposes of habitual criminal treatment. Trial counsel had no valid legal basis to object to the State's proffer to support habitual criminal treatment. So, any objection would have been futile. Notably, trial counsel had contemplated that habitual treatment likely would result in a lesser sentence. And the judge made that

precise observation when he explained that he adjudicated Dale a habitual criminal and sentenced him to ten years to life on each of the four counts. (ECF No. 54-6 at 52-56.) The trial court also agreed with defense counsel's argument at sentencing that, while none of the convictions were for lesser-included offenses, the four counts were all basically one event spanning just several seconds. The court, therefore, ran Dale's sentences concurrently. Dale has not demonstrated that counsel was deficient or that he was prejudiced. And appellate counsel was not ineffective for not raising this claim on appeal. The Nevada Supreme Court's decision on federal ground 4 was not contrary to, nor did it involve an unreasonable application of, *Strickland.* The Court therefore denies habeas relief on ground 4.

### v. Ground 5: Sentencing Enhancement

Dale argues that trial and appellate counsel failed to object to the amendment to the indictment on count III after the presentation of evidence and conclusion of the State's case. (ECF No. 44 at 20-22.) "The Sixth Amendment guarantees a criminal defendant a fundamental right to be informed of the nature and the cause of the accusation." *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir. 1987) (internal citation omitted). The Court looks first to the information or indictment of a defendant to determine whether there was fair notice. *See James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994); *Lincoln*, 807 F.2d at 812. "An information is not constitutionally defective if it sets forth 'the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against." *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985) (quoting *Russell v. United States*, 369 U.S. 749, 763-64 (1962)). The Nevada Supreme Court has held that a conviction will not be set aside or a new trial granted unless it is affirmatively demonstrated that an information is so insufficient that it results in a miscarriage of justice or actual prejudice with respect to a substantial right. *See Laney v. State*, 466 P.2d 666, 669 (Nev. 1970).

When the court conducted voir dire of a defense witness, before the jury came back, the prosecutor explained to the court that the State was making a minor amendment to the indictment. (ECF No. 53-2 at 179.) Count III charged Dale with the felony of

1   maliciously discharging a firearm in a vehicle but did not specify that it was an occupied

2   vehicle. (ECF No. 51-9 at 3.) At the close of the evidence, the prosecutor told the court

3   that Count III had been corrected. (*See* ECF No. 54-3 at 4.)

4       Defense counsel Picker testified at the state postconviction evidentiary hearing

5   that he did not object to the amendment of Count III of the indictment. (ECF No. 56-6 at

6   23-25, 46-48.) He said that Nevada law permitted the State to amend the indictment as

7   long as it doesn't substantially change what was presented to the grand jury. It didn't

8   occur to him to object to the amendment because the facts presented to the grand jury

9   and at trial were always that the truck was occupied. Picker hadn't noticed that the word

10  "occupied" was not in the body of the indictment.

11      Dale's appellate counsel testified that she did not raise the issue of the corrected

12  language in the charging document on appeal. (*Id.* at 8-16.) She noted that it had been

13  charged as a felony and nothing had changed. She said: "In my opinion it just changed

14  the language, that it was a felony, and it stayed a felony." (*Id.* at 10.) She agreed that the

15  only difference between the indictment and the amended indictment was that the word

16  "occupied" was inserted before the word "vehicle." She said it did not change the theory

17  of liability because the whole case was about the State seeking to convict Dale of firing a

18  gun at a person in a vehicle.

19      The Nevada Supreme Court held that neither trial nor appellate counsel were

20  ineffective:

21          Third, Dale claims trial counsel should have objected to the State's
22      amendment of the indictment after resting its case. Dale does not
        demonstrate deficient performance or prejudice. As noted by the district
23      court, NRS 173.095(1) provides that "[t]he court may permit an indictment
        or information to be amended at any time before verdict or finding if no
24      additional or different offense is charged and if substantial rights of the
        defendant are not prejudiced." After considering the grand jury proceedings
25      and the other counts in the indictment, the district court found that Dale was
        on notice that the State intended to charge him with discharging a firearm
26      at or into an occupied vehicle. Further, counsel testified that the defense
        was aware of the State's theory that Dale fired a gun into an occupied
27      vehicle, that he attempted to defend against that theory throughout the trial,
        and that he did not object to the amendment because it did not change the
28

21

1    theory of prosecution. Accordingly, Dale does not demonstrate trial counsel
was ineffective in this regard.[FN3]

2

3          [FN3: Additionally, Dale does not demonstrate that appellate counsel
was ineffective for omitting this argument on appeal. *See Kirksey*, 112 Nev.

4    at 998, 923 P.2d at 1114.

5 (ECF No. 57-17 at 4-5.)

6        Rejecting the challenge to the amendment of the indictment, the state district court

7 had explained:

8          A review of the grand jury proceedings makes clear the State
intended to charge the Petitioner with discharging a firearm into an occupied

9    vehicle. GRAND JURY PROCEEDINGS, JUNE 26, 2013 ("Grand Jury
Transcript"), 4:9-12. Furthermore the Court need not even look to the Grand

10    Jury Transcript to determine the Petitioner was on notice: an inquiry
confined to the four corners of the charging document leads to the

11    conclusion the indictment provided the Petitioner with notice of the crime
charged. Count III of the INDICTMENT ("the Indictment") is

12    "DISCHARGING FIREARM AT OR INTO A VEHICLE, a violation of NRS
202.285, a felony." Count II of the Indictment indicates the State was

13    alleging the Petitioner "fir[ed] from short range into the cab of the victim's

14    truck with substantial bodily harm" The Indictment 2:8-10. The indictment
put the Petitioner on notice of the State's theory that the Petitioner fired a

15    gun into an occupied vehicle. Mr. Picker testified there was "no question"
that the theory of the prosecution was the Petitioner shot at a person while

16    that person was in their car. Hearing Transcript, 46:21-22. The Petitioner's

17    counsel was aware of the theory and attempted to defend against the theory
throughout the course of trial.

18

19 (ECF No. 56-8 at 16-17.)

20        The Court concludes that Dale has not demonstrated that counsel was deficient or

21 that he was prejudiced. A fair reading of the indictment as a whole made the State's theory

22 clear. The defense team inarguably was on notice that the State's theory of the case was

23 that Dale had fired into the truck with Shontz inside. So the amendment did not violate

24 Dale's federal rights. Dale has not demonstrated that the Nevada Supreme Court's

25 decision on federal ground 5 was contrary to, or involved an unreasonable application of,

26 *Strickland.* Accordingly, ground 5 is denied.

27 ///

28 ///

### c. Procedurally Defaulted IAC Claims

Grounds 1(B) and 8 are technically exhausted and procedurally defaulted from federal habeas review. (*See* ECF No. 69 at 13-19; ECF No. 73 at 6.) Dale agrees that these claims are procedurally defaulted but contends that he can demonstrate cause and prejudice to excuse the default because his state postconviction counsel was ineffective for failing to raise these claims. (ECF No. 69 at 13-19.) The Supreme Court has held that ineffective assistance of counsel in postconviction proceedings does not establish cause for the procedural default of a claim. *See Coleman v. Thompson* 501 U.S. 722, 750 (1991). However, the Court subsequently held that the failure of a court to appoint counsel, or the ineffective assistance of counsel in a state postconviction proceeding, may establish cause to overcome a procedural default in specific, narrowly defined circumstances. *See Martinez v. Ryan,* 566 U.S. 1 (2012). *Martinez* established that: (1) where an ineffective assistance of counsel claim must be raised in an initial-review collateral proceeding under state law; (2) if petitioner had no counsel at the initial-review collateral proceeding or postconviction counsel was ineffective under *Strickland*; (3) a federal court will not be barred from considering a substantial claim of ineffective assistance of trial counsel. *See id.* at 17; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

### i. Ground 1(B): A Voluntary Intoxication Defense

Dale alleges that his trial counsel failed to investigate a voluntary intoxication defense. (ECF No. 44 at 10-13.) Dale contends that counsel should have presented evidence that Dale had been extensively smoking methamphetamine before the shooting, he had not been able to access his mental health medication, and he had exhibited extremely paranoid behavior in the weeks prior to and on the night of the incident.

In Nevada, a person's voluntary intoxication may be considered with respect to intent:

> No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular purpose, motive or

1
2

> intent is a necessary element to constitute a particular species or degree of crime, the fact of the person's intoxication may be taken into consideration in determining the purpose, motive or intent.

3

NRS § 193.220.

4
5
6
7
8
9
10
11
12
13
14
15
16
17

In support of this claim, Dale points to a 2022 evaluation that a psychiatrist conducted when Dale was in prison. (ECF No. 37-1.) This report was never presented to the state courts. In *Shinn v. Ramirez*, the U.S. Supreme Court reinforced the idea that a federal court should not consider new evidence on habeas review. 596 U.S. 366 (2022). *Ramirez* recognized the very high bar for excusing a petitioner's failure to develop the record in state court and explained that ineffective assistance of counsel claims under *Martinez* do not serve to excuse a petitioner's failure to develop the record in state court. *See also McLaughlin v. Oliver*, 95 F.4th 1239 (2024). The Court cannot consider new evidence, even where postconviction counsel was ineffective for failing to develop it in state court, unless the petitioner can satisfy 28 U.S.C. 2254(e)(2). *Ramirez*, 596 U.S. at 382. Under § 2254(e)(2), the petitioner must show that his claim is based on a new, retroactive constitutional law or a factual predicate that could not have previously been discovered. Dale cannot satisfy these requirements, so the Court may not consider the new expert report.

18
19
20
21
22
23
24
25
26
27

Even if the Court were permitted to consider the new expert report, it is unpersuasive. The evaluation was conducted eight years after the shooting. Dale told the psychiatrist that he "[t]ook meth a few days, or a couple of days" before the incident. (ECF No. 37-1 at 4.) He "might have also been drinking alcohol." (*Id.*) These fleeting references to drug and alcohol use would not support a defense that his voluntary intoxication prevented him from forming the intent to kill. And the defense presented their theory that Dale had serious mental illness, had been off his medication at the time of the shooting, and labored under the psychotic delusion that people were following him and trying to get him. Ground 1(B) is not a substantial claim of ineffective assistance of counsel. The Court therefore dismisses the claim as procedurally barred from federal review.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii. Ground 8: Mitigating Evidence at Sentencing

Dale alleges that counsel failed to investigate and present important mitigation evidence at sentencing. (ECF No. 44 at 27-29.) He argues that counsel should have hired a psychiatrist or psychologist to evaluate Dale to show that he could not form the intent to commit attempted murder because he was suffering from psychotic paranoid delusions.

"[T]he *Strickland* standard governs counsel's obligation to investigate and present mitigating evidence at sentencing." *Cox v. Del Papa*, 542 F.3d 669, 678 (9th Cir. 2008) (citing *Wiggins v. Smith*, 539 U.S. 510 (2003)). The Supreme Court has held that counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision because counsel had not "fulfilled their obligation to conduct a thorough investigation of the defendant's background." *See Williams v. Taylor*, 529 U.S. 362, 396 (2000).

Dale again points to the 2022 psychiatric evaluation, which the Court may not consider. Moreover, trial counsel investigated a NGRI defense and determined that Dale could not meet that strict standard. Counsel also presented witnesses at sentencing who testified to Dale's delusions and about how his mental state appeared to deteriorate substantially right before the shooting. In imposing sentence, the judge stated that he had no doubt that Dale had mental health issues, though he agreed with the competency evaluations that he was competent to proceed with the trial. (ECF No. 54-6 at 50-56.) The judge also explained that he was "gravely concerned" by Dale's violent criminal history as well as his convictions for driving under the influence. (*Id.* at 52.) However, the judge did not view life without the possibility of parole as the appropriate sentence. He also agreed with the defense position that concurrent sentences were warranted because the four counts were essentially one event over a matter of seconds. Dale would not be able to demonstrate that trial counsel was deficient for failing to present other evidence of Dale's mental health status at sentencing nor could he show a reasonable probability of a lesser

25

1   sentence. Ground 8 is not a substantial claim of ineffective assistance of trial counsel.

2   The Court dismisses ground 8 as procedurally barred from federal review.

3           The Petition, therefore, is denied in its entirety.

4   **VI.    CERTIFICATE OF APPEALABILITY**

5           This is a final order adverse to the Petitioner. As such, Rule 11 of the Rules Governing

6   Section 2254 Cases requires the Court to issue or deny a Certificate of Appealability

7   (COA). Accordingly, the court has *sua sponte* evaluated the claims within the Petition for

8   suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281

9   F.3d 851, 864-65 (9th Cir. 2002).

10          Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has

11  made a substantial showing of the denial of a constitutional right." With respect to claims

12  rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find

13  the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

14  *McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

15  (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate

16  (1) whether the petition states a valid claim of the denial of a constitutional right; and (2)

17  whether the court's procedural ruling was correct. *Id.*

18          Having reviewed its determinations and rulings in adjudicating Dale's Petition, the

19  Court finds that none of those rulings meets the *Slack* standard. The Court therefore

20  declines to issue a certificate of appealability for its resolution of Dale's Petition.

21  **VII.   CONCLUSION**

22          It is therefore ordered that the Petition (ECF No. 44) is denied.

23          It is further ordered that a Certificate of Appealability will not issue.

24          The Clerk of the Court is directed to substitute Manuel Portillo for Respondent Brian

25  Williams, enter judgment accordingly, and close this case.

26          DATED THIS 12th Day of December 2025.

27                                                  _____

28                                                  MIRANDA M. DU
                                                    UNITED STATES DISTRICT JUDGE